**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| LIONRA TECHNOLOGIES LIMITED, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 6:22-cv-00351-ADA |
| v. | § | |
| | § | **DEMAND FOR JURY TRIAL** |
| APPLE INC., | § | |
| | § | |
| *Defendant*. | § | |

**DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFF LIONRA
TECHNOLOGIES LTD.'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION AND FACTUAL BACKGROUND .......................................................1

II.   LEGAL STANDARD...................................................................................................3

     A.     Failure to State a Claim on Which Relief Can Be Granted .....................................3

     B.     Injunctive Relief...................................................................................................4

III.   ARGUMENT ...............................................................................................................5

     A.     The Amended Complaint Fails to Allege Facts Sufficient to
           Support Infringement Based on the Accused 5G Standard. ...................................5

     B.     Lionra's Standards-Based Allegations, Even If Accepted
           As True, Fail to Plausibly State a Claim................................................................8

     C.     The Amended Complaint Fails to Allege Facts Sufficient to
           Support Injunctive Relief.....................................................................................15

     D.     Lionra Should Not Be Permitted to Amend the Complaint..................................16

IV.   CONCLUSION...........................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 3, 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................. 3, 6, 9

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) .............................................................................. passim

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ......................................................................................... 5, 15, 16

*Fernandez-Montes v. Allied Pilots Ass'n*,
    987 F.2d 278 (5th Cir. 1993) ...................................................................................... 3

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010) ........................................................................... 4, 7, 8

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
    C.A. No. 6:17-cv-00143-RP-JCM, 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) ........ passim

*M & C Innovations, LLC v. Igloo Prods. Corp.*,
    No. 4:17-CV-2372, 2018 WL 4620713 (S.D. Tex. July 31, 2018) ...................................... 5, 16

*Optis Wireless Tech., LLC v. Huawei Techs. Co.*,
    No. 2:17-cv-123, 2018 WL 3375192 (E.D. Tex. July 11, 2018) ........................................... 4, 7

*Parish v. Frazier*,
    195 F.3d 761 (5th Cir. 1999) .................................................................................... 17

*Quintanilla v. Texas Television Inc.*,
    139 F.3d 494 (5th Cir. 1998) .................................................................................... 17

*Smith v. EMC Corp.*,
    393 F.3d 590 (5th Cir. 2004) .................................................................................... 17

*Stripling v. Jordan Prod. Co., LLC*,
    234 F.3d 863 (5th Cir. 2000) .................................................................................... 16

*United States ex rel. Adrian v. Regents of the Univ. of Cal.*,
    363 F.3d 398 (5th Cir. 2004) .................................................................................... 17

*Vervain, LLC v. Micron Tech., Inc.*,
   No. 6:21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ............................ 14, 15

**Rules & Regulations**

Fed. R. Civ. P. 12(b)(6)......................................................................................................... 1

Fed. R. Civ. P. 8(a)(2)........................................................................................................... 3

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Apple Inc. ("Apple") files this Motion to Dismiss Plaintiff Lionra Technologies Ltd.'s ("Lionra") First Amended Complaint (the "Amended Complaint").

## I.     INTRODUCTION AND FACTUAL BACKGROUND

After Apple filed a Motion to Dismiss Lionra's initial complaint (Dkt. 1, "Original Complaint"), Lionra did not even attempt to defend that complaint's deficiencies, and instead opted to file an Amended Complaint (Dkt. 23). As with the Original Complaint, the Amended Complaint alleges that Apple infringes the '141 Patent based on the alleged compliance with certain 5G standards by certain iPhone and iPad models (the "Accused Products"). Dkt. 23, ¶ 4. And while the Amended Complaint adds a small amount of technical detail to its Original Complaint, it fails to provide sufficient additional information to overcome the challenges raised by Apple in its first Motion to Dismiss (Dkt. 16). Indeed, the Amended Complaint fails to meaningfully supplement its allegations in order to state any set of facts plausibly demonstrating that Apple infringes any claim of United States Patent No. 7,260,141 (the "'141 Patent"). Moreover, despite the clear legal precedent provided by Apple in the Motion to Dismiss, Lionra continues to seek injunctive relief without pleading the existence of *any* of the factors required to support an injunction. Dkt. 23 at p. 14.

Although Lionra does not allege that the '141 Patent is a Standard Essential Patent ("SEP"), the Amended Complaint focuses on whether portions of the 3GPP TS 38.211 V16.8.0 standard (the "Accused 5G Standard") meet the claims of the '141 Patent, and fails to map the claim limitations to the Accused Products themselves.[1] *See* Dkt. 23 at ¶¶ 18, 20-21, 23-25. Critically, the Amended Complaint fails to allege that any claim of the '141 patent is essential to

---

[1] While certain of these paragraphs make cursory reference to third-party chips, they are insufficiently specific to plausibly state a claim for relief.

the cited portions of the Accused 5G Standard (in fact, it appears that the assignees never disclosed the '141 Patent as an SEP). And the Amended Complaint contains not a single allegation that the Accused Products actually implement those portions of the standard. *See generally* Dkt. 23. As a concession to Apple's Motion to Dismiss, Lionra makes a blanket statement that products that communicate with 5G NR cellular networks "must" send and receive signals that have been generated according to certain 3GPP standards, including the Accused 5G Standard. *Id.* at ¶ 17. But Lionra has cited no sources for that claim, nor has it provided sufficient allegations to make that allegation plausible, given that Lionra asserts the Accused 5G Standard infringes the '141 Patent, but undeniably, the '141 Patent has never been declared an SEP. Lionra thus has failed to allege any facts—much less plausible facts—demonstrating that the Accused Products infringe the '141 Patent based on the Accused 5G Standard.

And even if the Amended Complaint had sufficiently pleaded standards-based allegations (which it has not), Lionra still fails to plausibly allege that the Accused 5G Standard meets the claim limitations of the '141 Patent. For multiple asserted limitations, Lionra asserts facts that, even if taken as true, do not plausibly show that the Accused Products meet the claim elements. To the contrary, in some instances those facts even *contradict* what is being alleged. Lionra therefore fails to plead facts sufficient to support its claims of infringement, and the Amended Complaint should be dismissed.

Finally, the Amended Complaint's Prayer for Relief requests the Court to provide Lionra with "[a]ny and all injunctive and/or equitable relief to which Lionra may be entitled..." Dkt. 23 at p. 14. To the extent this broad language is seeking a permanent injunction, Lionra alleges no facts supporting its injunction request, let alone any facts supporting a finding of irreparable harm, establishing that an injunction would allegedly serve the public interest, explaining why

money damages would be inadequate to compensate Lionra for the alleged infringement, or any other fact needed to support injunctive relief. Thus, Lionra's conclusory claim for injunctive relief—if any—should also be dismissed.

## II.   LEGAL STANDARD

### A.   Failure to State a Claim on Which Relief Can Be Granted

In order to state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement ensures that plaintiffs provide "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). To meet this standard, a plaintiff must plead "enough facts to state a claim for relief that is plausible on its face," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 570, 555. "Conclusory allegations, or legal conclusions masquerading as factual conclusions, will not suffice to prevent a motion to dismiss." *Iron Oak Techs., LLC v. Acer Am. Corp.*, C.A. No. 6:17-cv-00143-RP-JCM, 2017 WL 9477677, *6 (W.D. Tex. Nov. 28, 2017) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

In particular, a plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Moreover, where "the factual allegations are actually *inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021). And the Federal Circuit has cautioned that "while a

3

patentee's pleading obligations are not insurmountable, a patentee may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims." *Id.* at 1346.

In the context of infringement allegations based on alleged compliance with a standard, a patent owner may "indirectly prove infringement by showing that (1) the standard necessarily meets the elements of the claim, (2) the accused product complies with the standard, and therefore (3) the accused product meets the claim." *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, No. 2:17-cv-123, 2018 WL 3375192, at *1 (E.D. Tex. July 11, 2018). While such indirect proof "may not require significant analysis of the accused product," it necessarily relies on "tying the product to the standard and the standard to the claim." *Id.* As a result, "if the patent is not found to be essential to the standard, the link between the product and the patent breaks." *Id.*

In addition, the Federal Circuit has acknowledged that "in many instances, an industry standard does not provide the level of specificity required to establish that practicing that standard would always result in infringement," and that sometimes "the relevant section of the standard is optional, and standards compliance alone would not establish that the accused infringer chooses to implement the optional section." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010). In such instances, a patent owner cannot establish infringement by simply arguing that a product complies with the standard. *See id.* Instead, "the patent owner must compare the claims to the accused products or, if appropriate, prove that the accused products implement any relevant optional sections of the standard." *Id.*

### B.    Injunctive Relief

To state a claim for injunctive relief, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent

injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). A claim for injunctive relief can thus be dismissed when "no facts are alleged in the Complaint that support an award of . . . a permanent injunction." *M & C Innovations, LLC v. Igloo Prods. Corp.*, No. 4:17-CV-2372, 2018 WL 4620713, at *6 (S.D. Tex. July 31, 2018). A complaint pleading injunctive relief must be stricken where, as here, the complaint does not contain any factual allegations that "raise[ ] any indication that . . . a permanent injunction might eventually be appropriate." *Id.*

## III.   ARGUMENT

### A.   The Amended Complaint Fails to Allege Facts Sufficient to Support Infringement Based on the Accused 5G Standard.

As with the Original Complaint, the Amended Complaint maps all but one claim element exclusively to the Accused 5G Standard, rather than to the Accused Products themselves, though it in some instances adds a generic allegation that the claim element incorporates a third-party chip.[2] *See* Dkt. 23 at ¶¶ 18, 20-21, 23-25. For example, to plead that the Accused Products contain "a baseband modulator configured to modulate outbound digital baseband signals to be transmitted via the phased arrange antenna," Lionra states that, for the iPhone 12 Pro, "this baseband modulator includes at least portions of the Qualcomm SDX55M '5G Modem-RF System' integrated circuit" (hereinafter, "Qualcomm Chip") *Id.* at ¶ 20. This statement contains no support, nor does it provide any detail as to which portions of the Qualcomm Chip allegedly constitute the "baseband modulator." *See id.* This is blanket, conclusory language which is no more than a legal conclusion (that the product contains claimed feature) "masquerading" as a factual conclusion, and does not pass muster at the pleading stage. *Iron Oak*, 2017 WL 9477677,

---

[2] While Lionra does not include a claim chart in its Amended Complaint, or specifically state which claim it is analyzing, the Amended Complaint language tracks Claim 1 of the '141 Patent, and Claim 1 is the only claim specifically called out for infringement. *See* Dkt. 23 at ¶ 14. Accordingly, Apple treats the Amended Complaint as attempting to allege infringement of Claim 1 for purposes of this analysis.

at *6. The mere existence of the Qualcomm Chip, without additional factual allegations as to its function or composition, does not plausibly plead the existence of a baseband modulator generally, much less "a baseband modulator configured to modulate outbound digital baseband signals to be transmitted via the phased arrange antenna." *See id.* at *5 (dismissing complaint where the "claims are more akin to 'naked assertions devoid of further factual enhancement' because Iron Oak does not explain in its Complaint how the Warranty contains specific facts regarding Acer's intent to induce infringement (quoting *Twombly*, 550 U.S. at 557)).

Beyond pointing to the mere existence of the Qualcomm Chip, Lionra cites only to the following portions of the Accused 5G Standard to allege the presence of the baseband modulator limitation:

### 5.4    Modulation and upconversion

Modulation and upconversion to the carrier frequency $f_0$ of the complex-valued OFDM baseband signal for antenna port p, subcarrier spacing configuration μ, and OFDM symbol $l$ in a subframe assumed to start at $t = 0$ is given by

- for PRACH

$$\mathrm{Re}\left\{s_l^{(p,\mu)}(t)e^{j2\pi f_0 t}\right\}$$

- for RIM-RS

$$\mathrm{Re}\left\{s_l^{(p,\mu)}(t)e^{j2\pi f_0^{\mathrm{RIM}}\left(t - t_{start,l}^{\mu} - N_{CP}^{\mu}T_c\right)}\right\}$$

where $f_0^{\mathrm{RIM}}$ is the configured reference point for RIM-RS;

- for all other channels and signals

$$\mathrm{Re}\left\{s_l^{(p,\mu)}(t)\cdot e^{j2\pi f_0\left(t - t_{start,l}^{\mu} - N_{CP}^{\mu}T_c\right)}\right\}$$

**(3GPP TS 38.211 V16.8.0, § 5.4.)**

### 7.3.1.5    Mapping to virtual resource blocks

The UE shall, for each of the antenna ports used for transmission of the physical channel, assume the block of complex-valued symbols $y^{(p)}(0), \ldots, y^{(p)}(M_{\mathrm{symb}}^{\mathrm{ap}} - 1)$ conform to the downlink power allocation specified in [6, TS 38.214] and are mapped in sequence starting with $y^{(p)}(0)$ to resource elements $(k', l)_{p,\mu}$ in the virtual resource blocks assigned for transmission which meet all of the following criteria:

- they are in the virtual resource blocks assigned for transmission;
- the corresponding physical resource blocks are declared as available for PDSCH according to clause 5.1.4 of [6, TS 38.214];

**(3GPP TS 38.211 V16.8.0, § 7.3.1.5.)**

Dkt. 23 at ¶ 20. But, because the Amended Complaint does not allege that the '141 Patent is essential to the Accused 5G Standard, this alleged correlation between the Accused 5G Standard

6

and the '141 Patent alone is insufficient to establish infringement. That is, "the link between the product and the patent breaks." *Optis*, 2018 WL 3375192, at *1.

Because the '141 Patent is not—nor is it alleged to be—a SEP, Lionra must plead facts demonstrating that it is plausible that compliance with the cited portions of the Accused 5G Standard is required in order for the Accused Products to have 5G functionality, or that the Accused Products actually implement those portions of the Accused 5G Standard.[3] *Fujitsu*, 620 F.3d at 1327–28. But Lionra's Amended Complaint does neither. Lionra makes a single, unsupported blanket statement that the ability to communicate with 5G NR cellular networks must generate and/or receive radio signals that "have been generated according to the various 3GPP technical specification documents that define 5G NR cellular network operation," including the Accused 5G Standard. Dkt. 23 at ¶ 17. But this statement is insufficient to plausibly allege the Accused 5G Standard is **required** to use 5G networks (as opposed to including optional elements which by definition would not be required), as it is entirely unsupported and contradicts the fact that the '141 Patent is indisputably not an SEP patent. *See Bot M8*, 4 F.4th 1342, 1354 (finding factual allegations "insufficient to state a plausible claim" where they contradicted the requirements of the claim). Lionra thus has not plausibly pleaded that practicing that standard would always result in infringement, and has consequently failed to plausibly plead infringement. *Fujitsu*, 620 F.3d at 1327–28.

Similarly, Lionra has not even attempted to demonstrate that the Accused Products

---

[3] In the alternative, Lionra could attempt to compare the claim limitations to the Accused Products themselves, rather than to the Accused 5G Standard. *Fujitsu*, 620 F.3d at 1327–28 (stating that, in the absence of a SEP or mandatory implementation of a standard, "the patent owner must compare the claims to the accused products"). But Lionra has not even attempted to map the Accused Products to any claim limitation other than "electronically steerable phased array antennas" and stating that the Qualcomm Chip exists in the Accused Products. Dkt. 23 at ¶ 19-22.

implement the cited portions of the Accused 5G Standard. *Id.* Rather, the Amended Complaint's only mentions of the features of the Accused Products themselves (rather than the Accused 5G Standard) are (1) an allegation that the iPhone 12 Pro is advertised as being able to communicate with cellular networks utilizing the 3GPP 5G NR ("New Radio") protocols, (2) a teardown picture purporting to show "electronically steerable phased array antennas" in the iPhone 12 Pro, and (3) a teardown picture purporting to show that the iPhone 12 Pro contains the Qualcomm Chip. *See* Dkt. 23 at ¶¶ 16, 19, 20-22. But none of these mentions constitutes a plausible pleading that the Accused Products implement the cited portions of the Accused 5G Standard, and therefore cannot constitute a plausible pleading of infringement. *Fujitsu*, 620 F.3d at 1327–28.

Lionra has thus failed to plausibly plead infringement based on the Accused 5G Standard. Because the Amended Complaint consists almost entirely of unsupported standards-based allegations, it must be dismissed.

> **B.      Lionra's Standards-Based Allegations, Even If Accepted As True, Fail to Plausibly State a Claim.**

Even if this Court were to consider Lionra's mapping of Claim 1 of the '141 Patent to the Accused 5G Standard—which it should not—Lionra's allegations still fall short of the *Twombly/Iqbal* pleading standard. Indeed, as in *Bot M8*, Lionra's alleged facts are repeatedly *inconsistent with* a finding of infringement, and are therefore "insufficient to state a plausible claim." 4 F.4th at 1354.

In the first instance, Claim 1 of the '141 Patent requires the presence of both "a baseband modulator configured to modulate outbound digital baseband signals" and "a baseband demodulator configured to demodulate incoming digital baseband signals." *See* Dkt. 23 at Ex. 1, Claim 1. The '141 Patent admits that modulation and demodulation are not only different/distinct but direct opposites of each other, because they operate on signals traveling in opposite directions

(modulation of outbound/transmit signals and demodulation of incoming/received signals). *See id.* at Claim 1 (claiming both a "modulator" that modulates "outbound" signals and a "demodulator" that demodulates "incoming" signals), Abstract ("Both for transmit signal modulation and received signal demodulation…"). Yet, despite Apple pointing out this very inconsistency in its Motion to Dismiss, Lionra's Amended Complaint continues to cite the same portion of the Accused 5G Standard—3GPP TS 38.211 V16.8.0, § 5.4 ("Modulation and upconversion")—as demonstrating the existence of *both* a modulator and a demodulator. *See* Dkt. 23 at ¶¶ 20-21.

Not only is this inherently contradictory, but the standard section Lionra cites deals, on its face, exclusively with modulation rather than demodulation:

### 5.4   Modulation and upconversion

Modulation and upconversion to the carrier frequency $f_0$ of the complex-valued OFDM baseband signal for antenna port p, subcarrier spacing configuration $\mu$, and OFDM symbol $l$ in a subframe assumed to start at $t = 0$ is given by

- for PRACH

$$\text{Re}\left\{s_l^{(p,\mu)}(t)e^{j2\pi f_0 t}\right\}$$

- for RIM-RS

$$\text{Re}\left\{s_l^{(p,\mu)}(t)e^{j2\pi f_0^{\text{RIM}}\left(t - t_{\text{start},l,Q}^{\mu} - N_{\text{CP},l}^{\mu} T_c\right)}\right\}$$

where $f_0^{\text{RIM}}$ is the configured reference point for RIM-RS;

- for all other channels and signals

$$\text{Re}\left\{s_l^{(p,\mu)}(t) \cdot e^{j2\pi f_0\left(t - t_{\text{start},l}^{\mu} - N_{\text{CP},l}^{\mu} T_c\right)}\right\}$$

(3GPP TS 38.211 V16.8.0, § 5.4.)

*Id.* While Lionra makes a half-hearted attempt to claim modulation shows demodulation, this attempt is insufficient. Lionra's Amended Complaint states that, because the Accused 5G Standard requires the received signals to have been modulated, a baseband demodulator must demodulate it. *Id.* at 21. Even accepting that as true, Lionra has entirely failed to point to a section of the standard that shows the required demodulation is done with a demodulator that meets the specific limitations of the '141 Patent's claims. *See id.* Instead, Lionra has alleged that the claim limitation requiring a "<u>de</u>modulator configured to <u>de</u>modulate incoming signals" is met by a

standard which requires modulation of transmitted signals. Lionra's pleading is therefore "inconsistent with the requirements of [the] claims," and the Amended Complaint therefore must be dismissed. *Bot M8*, 4 F.4th at 1346.

In addition to these fatal inconsistencies, Lionra has also failed to plausibly allege that the Accused Products, or even a generic product implementing the Accused 5G Standard, meet the claims of the '141 Patent. For example, even accepting Lionra's argument that demodulation is inherently required by the standard, the demodulator limitation discussed above requires much more than just demodulation. It requires "a baseband demodulator configured to demodulate incoming digital baseband signals generated from signals received via the phased array antenna." *See* Dkt. 23 at ¶ 21. But Lionra has failed to plead any fact or cite to any portion of the Accused 5G Standard that requires ***baseband*** demodulation, rather than some other form of demodulation. *See id.* Lionra has also failed to plead any facts alleging (or point to any portion of the Accused 5G Standard requiring) that the digital baseband signals being demodulated were "generated from signals received via the phased array antenna." *Id.*

Moreover, the "phased array antenna" referenced in the baseband demodulation limitation must be comprised of "a plurality of antenna elements." *Id.* at ¶ 15. But Lionra does not plausibly plead that the "phased array antenna comprising a plurality of antenna elements" are used for receiving the signals that are then demodulated. *Id.* at ¶¶ 19, 21. The mere existence of an antenna and the fact that demodulation occurs does not plausibly allege that the demodulation occurs on signals that were received on the plurality of antenna elements. The same is similarly true of Lionra's allegations regarding the baseband modulator limitation. Lionra does not allege any facts supporting a claim that the plurality of antenna elements of the phased array antenna transmit the digital baseband signals modulated by the baseband modulator. *Id.* at ¶ 20.

In further support of its claims regarding a "phased array antenna," Lionra also cites to an Apple's Patent Application Publication. *Id.* at ¶ 19. But this document does not actually support Lionra's assertions. In the first instance, the Amended Complaint asserts only that "Figure 2 depicts an ***iPhone-like*** device" with "antenna arrays." *Id.* The Amended Complaint does not show (or even claim) that the Accused Products are the physical embodiments of Figure 2, simply that Figure 2 looks like an iPhone. The fact that a figure in an unrelated patent application looks like an iPhone and contains an antenna array does not plausibly state that the Accused Products contain that same antenna array. Furthermore, nowhere does the Amended Complaint allege that the antenna array depicted in Figure 2 of that publication meets all of the requirements of the "phased array antenna" claimed by the '141 Patent. *Id.* In particular, the Amended Complaint does not allege that the antenna arrays in Figure 2 perform all of the claimed functions discussed above, such as transmission of signals modulated by the baseband modulator and receipt of signals that will be demodulated by the baseband demodulator. *Id.* at ¶¶ 19-21. Accordingly, Lionra has not pleaded facts sufficient to plausibly allege that the "phased array antenna comprising a plurality of antenna elements" actually performs the functions claimed by the '141 Patent.

As another example, Claim 1 requires "a shared baseband processor." Dkt. 23 at Ex. 1, Claim 1. The Amended Complaint does not identify any processor in the Accused Products. While Lionra again references the existence of the Qualcomm Chip, it does not plausibly plead that the chip constitutes "a shared baseband processor configured to receive digital baseband signals including the modulated outbound digital baseband signals and the incoming digital baseband signals, said shared baseband processor applying a single phase adjustment to each of the digital baseband signals to jointly account for both beamforming phase rotation and carrier

phase rotation of individual antenna elements." *Id.* at ¶ 22. Instead, Lionra makes a blanket, unsupported statement that "this shared baseband processor includes at least portions of the [Qualcomm Chip]." *Id.* But as noted above, this is nothing more than a conclusory statement that cannot pass muster at the pleading stage. *See Iron Oak*, 2017 WL 9477677, at *5-6.

  Accordingly, Lionra cites to no evidence of a shared baseband processor, and instead points to baseband processing functions specified in the Accused 5G Standard.[4] Dkt. 23 at ¶ 23. But even if such functions are implemented by processors, Lionra has pled no fact that plausibly indicates the presence of a ***shared*** baseband processor for doing so (*i.e.* a single processor that operates on both outbound and inbound digital baseband signals). *Id.* Similarly, while Lionra has stated that 5G networks "utilize phase rotation to account for beamforming phase rotation and carrier phase rotation," it has pleaded ***no*** facts showing that that the processor will "***jointly account*** for both beamforming phase rotation and carrier phase rotation of individual antenna elements"—a key element of the asserted claims. *See id.* at ¶¶ 22-23 (emphasis added). Furthermore, when attempting to plead the presence of a shared baseband processor that will jointly account for these rotations of the individual antenna elements, Lionra relies on portions of the Accused 5G Standard that focus on the antenna ***ports***, not the antenna ***elements***. *See id.* at ¶ 23. Antenna ports and antenna elements are fundamentally different product features. Accordingly, Lionra's reference to the Accused 5G Standard as it applies to antenna ports does not plausibly plead the presence of a shared baseband processor that "jointly account[s] for both

---

[4] Lionra has added an excerpt from 3GPP TS 38.214 to this section of its Amended Complaint. However, this excerpt shows only baseband processing functions, as do the excerpts from the Accused 5G Standard. Dkt. 23 at ¶ 23. Lionra has similarly added an excerpt from 3GPP TS 38.300 to demonstrate that the Accused Products apply beamforming phase rotations. *Id.* at ¶ 24. Even if true, this is insufficient to plead a "shared baseband processor applying a single phase adjustment to each of the digital baseband signals to jointly account for both beamforming phase rotation and carrier phase rotation of individual antenna elements."

beamforming phase rotation and carrier phase rotation of individual antenna elements," as required by the '141 Patent.

Moreover, Lionra's repeated generic references to the existence of the Qualcomm Chip emphasizes its insufficiency as a pleading mechanism. Lionra points to the Qualcomm Chip as supporting the existence of 3 different limitations: the baseband modulator, the baseband demodulator, and the shared baseband processor. Dkt. 23 at ¶¶ 20-22. In *Iron Oak*, this Court found induced infringement claims did not meet the pleading standards where the allegations for two different patents were "textually identical, save for changing the patent number," and where "identical language" was used, even though the patents were "substantively different and would not be infringed upon in an identical fashion." 2017 WL 9477677, at *6. Similarly here, Lionra uses the ***exact same***, incredibly vague single sentence to attempt to plead that the Qualcomm Chip contains each of these patentably distinct claim limitations. In each paragraph, Lionra does no more than state "In the iPhone 12 Pro, this [claim limitation] includes at least portions of the Qualcomm SDX55M '5G Modem-RF System' integrated circuit, identified with a green rectangle in the teardown image above." *Id.* Lionra does not specify which portions of the Qualcomm Chip would meet each of these limitations, nor does Lionra attempt to distinguish between the various limitations and their implementations. This *pro forma*, conclusory language that generically claims "at least [some unspecified] portions" of the Qualcomm chip as meeting 3 distinct patent limitations does not plausibly plead infringement. *Iron Oak*, 2017 WL 9477677, at *6.

Such repeated failure to identify the necessary claim elements renders the Amended Complaint insufficient. As this Court noted in *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-00487-ADA, 2022 WL 23469, at *2 (W.D. Tex. Jan. 3, 2022), the more complex the technology

at issue, the more detailed the allegations of the complaint may need to be to avoid dismissal. There, the Court found that the allegations in the complaint required making numerous assumptions and that, in the context of relatively complex software and firmware technology, such assumptions were insufficient to state a claim. *Id.* at *3-*4 (finding assumption that "data in the MLC blocks will presumably be rewritten to blocks of SLCs" was not a "reasonable inference" when no facts were pled to support that assumption, and therefore dismissing Complaint).

Here too, finding that Lionra's Amended Complaint plausibly alleges infringement requires the reader to assume that modulation is equivalent to demodulation and that reference to baseband processing functions in a standard necessarily requires a shared baseband processor. While none of these assumptions are factually accurate, they are also legally insufficient as a matter of law, particularly in light of the complexity of the 5G and signal modulation technology at issue in this case. *Id.* at *4-*5 (noting that the level of detail required to satisfy pleading requirements depends in part on "'the complexity of the technology'" and finding that the "level of detail provided in Vervain's allegations did not meet the standard here, where the technology is not simple") (citing *Bot M8*, 4 F.4th at 1353).

Just as the assumptions made by the complaint in *Vervain* were not a "reasonable inference" that tied the claims to the accused products through plausibly pled facts (*id.* at *3-*4), Lionra's Amended Complaint contains inappropriate leaps of logic, unsupported by any factual record. Rather than pleading facts that support its theories (whether as to essentiality or implementation of the Accused 5G Standard or as to the presence of the claim elements in that standard), Lionra's Amended Complaint instead requires numerous unpled assumptions, as did the complaint in *Vervain*. Indeed, the situation here is even more egregious, as Lionra does not

even make *conclusory* allegations that clarify its positions, leaving Apple to wonder what theory forms the basis of Lionra's infringement allegations and providing Apple with insufficient notice of the claims against it. The Amended Complaint is therefore deficient as a matter of law and should be dismissed.

### C. The Amended Complaint Fails to Allege Facts Sufficient to Support Injunctive Relief

Lionra's Prayer for Relief contains a request for "[a]ny and all injunctive and/or equitable relief to which Lionra may be entitled..." Dkt. 23 at p. 14. Yet, to the extent this may be interpreted as a request for a permanent injunction, the Amended Complaint alleges no facts sufficient to meet any one of the four *eBay* factors: "(1) that [Lionra] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc.*, 547 U.S. at 391. For example, Lionra has not alleged that it makes, licenses, or otherwise commercializes the '141 patent in any way. The Amended Complaint is silent as to any irreparable injury. Nor has Lionra explained why monetary damages are an inadequate remedy. Moreover, further amendment of the Amended Complaint would be futile because Lionra is a non-practicing entity seeking monetary damages and is not a competitor of Apple—accordingly it cannot show irreparable harm. Therefore, this claim for relief should be dismissed as it is unsupported by any pleaded facts. *M & C*, 2018 WL 4620713, at *6 (granting motion to dismiss claim for injunctive relief where "no facts are alleged in the Complaint that support an award of . . . a permanent injunction"); *see also eBay Inc.*, 547 U.S. at 396-97 (concurrence) ("An industry has developed in which firms use patents . . . primarily for obtaining licensing fees" and use the threat of an injunction as "a bargaining tool to charge exorbitant fees for licenses." In such

instances "legal damages may well be sufficient to compensate for the infringement and an injunction may not serve the public interest.").

### D.       Lionra Should Not Be Permitted to Amend the Complaint.

The Court should exercise its discretion to dismiss the Amended Complaint with prejudice, rather than permitting further amendment. It is squarely within the district court's discretion to deny a plaintiff leave to amend. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000). This Court follows Supreme Court precedent in examining five factors to determine whether to grant leave to amend: "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). This includes consideration of "whether the moving party failed to take advantage of earlier opportunities to amend." *Quintanilla v. Texas Television Inc.*, 139 F.3d 494, 499 (5th Cir. 1998).

Here, Lionra has presented an Amended Complaint that suffers the same errors as its Original Complaint, as Lionra was unable to amend the complaint to successfully state a claim. The pleadings process "is not a game where the plaintiff is permitted to file serial amendments until he finally gets it right." *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004). Lionra's failure to cure clearly outlined deficiencies in the Original Complaint itself justifies dismissal with prejudice, and also demonstrates the futility of permitting Lionra yet another opportunity to amend its Amended Complaint. If Lionra possessed sufficient information to state a claim for infringement against Apple, it could and should have included that information in the Original Complaint, and certainly should have done so in the Amended Complaint. This failure to "take advantage of earlier opportunities to amend" demonstrates Lionra's lack of good faith basis for pursuing this case, and thus the futility of amendment. *Quintanilla*, 139 F.3d at 499.

Moreover, any attempt to further amend the Amended Complaint by introducing new information or theories after a second motion to dismiss would constitute undue delay and would prejudice Apple. If in fact Lionra has sufficient basis to allege infringement, there is no reason Lionra could not have adequately pled infringement in the Amended Complaint. Only adding sufficient additional information after a second motion to dismiss (filed on the same basis as the first) would require Lionra to demonstrate that its delay in providing that information was "due to oversight, inadvertence or excusable neglect"—a high burden to meet. *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999). Lionra's further attempts to amend—after failing to properly amend its Original Complaint—would also prejudice Apple by forcing it to engage in even more briefing on claims that are clearly inadequate, and on issues that Lionra has already had ample opportunity to correct.

For these reasons, the dismissal should be with prejudice, and Lionra should not be granted leave to further amend the Amended Complaint.

## IV.    CONCLUSION

For the foregoing reasons, Apple's motion to dismiss Lionra's Amended Complaint should be granted.

Dated: July 19, 2022

Steven D. Moore (admitted in W.D. Tex.)
**Kilpatrick Townsend & Stockton LLP**
Two Embarcadero Center Suite 1900
San Francisco, CA USA 94111
Tel: (415) 576-0200
Fax: (415) 576-0300
Email: smoore@kilpatricktownsend.com

Mansi H. Shah (*pro hac vice*)
Gail D. Jefferson (*pro hac vice*)
**Kilpatrick Townsend & Stockton LLP**
1302 El Camino Real, Suite 175
Menlo Park, CA 94025
Tel: (650)752-2445
Fax: (650) 618-8641
Email:
mansi.shah@kilpatricktownsend.com
Email:  gjefferson@kilpatricktownsend.com

Alton L. Absher III (admitted in W.D. Tex.)
**Kilpatrick Townsend & Stockton LLP**
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Tel: (336) 607-7300
Fax: (336) 607-7500
Email:  aabsher@kilpatricktownsend.com

Amanda N. Brouillette (*pro hac vice*)
**Kilpatrick Townsend & Stockton LLP**
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Tel: (404) 685-6775
Fax: (404) 541-3335
Email:
abrouillette@kilpatricktownsend.com

Patrick M. Njeim (*pro hac vice*)
**Kilpatrick Townsend & Stockton LLP**
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Tel: (206) 467-9600
Fax: (206) 299-3458
Email:  pnjeim@kilpatricktownsend.com

Respectfully submitted,

*/s/ J. Stephen Ravel*
J. Stephen Ravel
Texas State Bar No. 16584975
**Kelly Hart & Hallman LLP**
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com

*Attorneys for Defendant Apple Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF filing system on July 19, 2022.

/s/ J. Stephen Ravel
J. Stephen Ravel